**SANELE ALE, Appellant**

**v.**

**PETER E. REID STEVEDORING, INC., SIATU'U FA'ASIU and NATIONAL PACIFIC INSURANCE CO., LTD, Appellees**

High Court of American Samoa
Appellate Division

AP No. 10-93

March 1, 1994

Before RICHMOND, Associate Justice, CANBY,[*] Acting Associate Justice, MUNSON,[**] Acting Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:　　　　For Appellant, Jill W. Crew
　　　　　　　　For Appellees, Roy J.D. Hall, Jr.

RICHMOND, Justice:

On December 19, 1989, appellant Sanele Ale ("Ale") was struck by a pickup truck while working as a security officer in the American Samoa Government's dock area. The truck was driven by appellee Siatu'u Fa'asiu ("Fa'asiu"), an employee of appellee Peter E. Reid Stevedoring, Inc. ("Reid Stevedoring"), during the regular course of his employment.

In its opinion issued May 7, 1993, the trial court found that Fa'asiu, by then deceased, was negligent in the operation of the pickup truck. Reid Stevedoring, under the doctrine of *respondeat superior*, was found vicariously liable for damages arising as a result of Fa'asiu's negligence. The trial court found that Ale, as a result of the accident, had sustained three fractured ribs on his left side and suffered lung contusion. The court awarded damages for these injuries, inclusive of medical expenses, at $25,000. The court, however, found in appellees' favor as to Ale's claimed injuries of debilitating weakness and sensory loss on his left side. It is this aspect of the trial court's findings that Ale now challenges.

　The type of injury that Ale seeks compensation for is what is most commonly known as a conversion reaction, although other descriptive terms are frequently used. This type of injury occurs when an individual suffers a particularly traumatic and unusual event. Following the incident, by days or months, the person "converts" the mental and emotional anguish into physical symptoms. Therefore, while the physical aspects of a conversion reaction are real, their origin lies in the individual's psychological make-up. These reactions are generally held to be compensable, as both parties to this appeal agree, particularly when coupled with a physical injury. In this case, the trial court has already established Fa'asiu's negligence. The questions remaining on this appeal

---

[*] Honorable William C. Canby, Jr., Circuit Judge, United States Court of Appeal for the Ninth Circuit, serving by designation of the Secretary of the Interior.

[**] Honorable Alex R. Munson, Chief Judge, United States Court of Appeal for the Ninth Circuit, serving by designation by the Secretary of the Interior.

are whether or not Ale did indeed exhibit a conversion reaction, and, if he did, whether or not the accident was its proximate cause.

From this court's review of the record, medical reports and counsel's briefs, it appears that Ale did indeed exhibit symptoms of physical injury after the accident in addition to his three fractured ribs and lung contusion. The physicians that examined Ale at the LBJ Tropical Medical Center after the accident noted motor deficiencies in Ale's left side and recommended off-island follow-up to determine the cause of this weakness.[1] Ale was subsequently examined by three additional physicians during off-island treatment in Hawaii.[2] Although these doctors, who represent a variety of medical specialties, did not agree on many aspects of Ale's injuries, they did observe varying levels of sensory loss and weakness on his left side.

Lastly, Ale was examined by a seventh physician, Dr. Aloimoa Anesi, who definitively noted both Ale's weakness and sensory loss. Dr. Anesi testified at trial that these symptoms were part of Ale's conversion reaction. While the reports of the other doctors, who did not testify at trial, did not wholeheartedly support Dr. Anesi's conclusions, none positively ruled out this possibility. Therefore, the trial court was faced with ample evidence of Ale's physical symptoms and evidence that he either had, or may have had, a conversion reaction. The court could only find that the proffered evidence clearly established the existence of Ale's physical symptoms.[3]

---

[1] While none of the three LBJ physicians was sure as to the extent or cause of Ale's injuries all agreed that he did exhibit sensory loss and weakness on his left side. Dr. Te'ariki No'ovao noted that further evaluation was necessary and that Ale's grip strength was weak. Dr. Ronald Vinyard, while stating that there was no physical explanation, noted symptoms of motor and sensory deficiencies. Dr. Victor Williams, whose finding were only available to the court via another doctor's summary, found he was unwilling to diagnose without speculation.

[2] Dr. Michael Okihiro noted complete sensory loss on Ale's left side, with no neurological correlates. Dr. Clyde Ishii found Ale's grip and muscle strength weak and concluded that Ale might be ". . . suffering from a conversion type reaction. . . ." Dr. Ishii recommended further testing by Dr. Robert Marvit. Dr. Marvit viewed the majority of Ale's symptoms as products of Ale's own perceptions, and noted weakness in Ale's left side.

[3] Although the opinion of the trial court does not definitively state whether or not if felt Ale had established the existence of his physical symptoms, its decision alludes to the existence of those symptoms. It is true that on page 2 of the trial transcript, the court states that the dispute was over Ale's claims that his weakness was a result of the accident, while

■ We turn now to the question of causation. As stated by the trial court, the burden of proof in this regard lies with Ale, who must establish a reasonable basis for the conclusion that Fa'asiu's conduct was, more likely than not, the cause-in-fact of the injury (Decision and Opinion issued May 7, 1993 at 2, *citing* PROSSER AND KEETON ON TORTS, § 41 at 269 (5th ed. 1984)). In light of our holding that the trial court was obliged to find definite evidence of Ale's symptoms of weakness and sensory loss (regardless, for the moment, of their origin) we examine the issue of causation in that light.

Ale submitted that he was in fine health prior to the accident, and that he had never before experienced the symptoms at issue. While Ale's testimony, in this regard, appears to be uncontroverted, there is dispute as to his level of health prior to the accident. About seven months prior to the accident, Ale was involved in an altercation with some youths in Pago Pago, after which he received medical treatment. While Ale submitted that he had fully recovered from this incident prior to the accident, appellees implied that the head injuries received during this earlier incident contributed to the symptoms now being exhibited. This dispute was left unresolved by the trial court.

The parties also differed as to the issue, if any, of Ale's malingering. Ale submitted that he was a faithful worker who had never malingered. Appellees noted Ale's varying levels of weakness, as shown by medical tests, and his contradictory responses to questions by medical personnel. This issue, another aspect of causation, was also left unresolved at the trial level.

The third aspect of causation is evinced by the testimony and written reports of the physicians who examined Ale prior to trial. In this regard, Ale relied heavily on Dr. Anesi's testimony that, without qualification, Ale's symptoms were the result of the accident. Dr. Anesi also testified that the written reports submitted by other physicians documented real problems and were consistent with his own evaluation. Appellees, in

---

appellees claimed that it was the result of malingering. But on pages 8-9 of the transcript, the trial court, seemingly assuming the existence of Ales's symptoms, wonders only at their cause (conversion reaction, malingering, or some combination). On page 10, the trial court states that ". . . we find the weight of medical opinion . . . to preponderate in favor of a non-organic explanation to plaintiff's symptoms. Therefore, we can conclude from the trial court's own statements, taken together with the available medical evidence, that the trial court did indeed find that Ale had some undetermined level of weakness and sensory loss on his left side.

turn, submitted that the medical reports were inconclusive and incomplete and that Dr. Anesi's testimony did not itself establish a causal link. At trial, the court found that it would be "pure conjecture" to attempt to conclude whether or not the accident was the cause of Ale's symptoms.

Examining the parties respective submissions and the holding at trial, this court is unable to rule on the causal connection between Ale's demonstrated symptoms and the accident. This is an issue that needs to be examined in greater depth, most appropriately at the trial level. Both parties would then have the opportunity to submit further evidence and briefs on the extent of Ale's symptoms and the possible causal connection between the accident and Ale's symptoms of weakness and sensory loss on his left side.

Accordingly, the trial court's decision is hereby remanded for further proceedings consistent with this opinion.

It is so ordered.